**2014-1714**

# United States Court of Appeals
# for the Federal Circuit

EDWARD D. IOLI TRUST,
and GENERAL TRAFFIC CONTROLS, INC.,

*Plaintiffs-Appellees,*

*v.*

VIGILANT VIDEO, INC.,

*Defendant-Appellant,*

MVCONNECT, LLC,

*Defendant.*

*Appeal from the United States District Court for the Eastern District of Texas
in Case No. 2:10-cv-00605-JRG, Judge J. Rodney Gilstrap*

## NON-CONFIDENTIAL

## BRIEF FOR APPELLANT
## VIGILANT VIDEO, INC.

ROY B. THOMPSON
THOMPSON BOGRAN, P.C.
5 Centerpointe Dr., Suite 400A
Lake Oswego, OR 97035
Telephone: 503-635-3400
Facsimile: 503-635-3897
E-mail: roythompson@comcast.net

*Attorneys for Defendant-Appellant
Vigilant Video, Inc.*

OCTOBER 28, 2014

# CERTIFICATE OF INTEREST

Counsel for Appellant Vigilant Video, Inc. certifies the following:

1.     The full name of every party or amicus represented by me is: Vigilant Video, Inc.  (Vigilant has changed its name to Vigilant Solutions, Inc.)

2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is: Not applicable.

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are: None.

4.     The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Thompson Bográn, P.C.:

     Roy B. Thompson (trial court and appellate court)

     Amy M. Bográn (trial court)

Mark S. Hubert (trial court)

# TABLE OF CONTENTS

*Page*

CERTIFICATE OF INTEREST ................................................................................. i

TABLE OF CONTENTS ....................................................................................... ii

TABLE OF AUTHORITIES ................................................................................. iv

STATEMENT OF RELATED CASES ............................................................... viii

STATEMENT OF JURISDICTION ....................................................................... 1

   I.   Statement of General Jurisdiction .................................................................. 1

  II.   Statement of Case in Controversy:  Ruling in Vigilant's Favor will
       Result in Adverse Outcome for Ioli Trust and Thus Presents a
       Justiciable Controversy .................................................................................. 1

STATEMENT OF THE ISSUES .............................................................................. 5

STATEMENT OF THE CASE ................................................................................. 5

STATEMENT OF FACTS ....................................................................................... 7

SUMMARY OF ARGUMENT .............................................................................. 13

STANDARD OF REVIEW .................................................................................... 15

ARGUMENT ......................................................................................................... 16

   I.   The District Court Erred in Interpreting the DRN Agreement's
       License and Release for Affiliates as Not Applying to Affiliate
       Vigilant. ....................................................................................................... 16

       A. Under Basic Rules of Contract Construction, the DRN Agreement
          License and Release Applies to all DRN Affiliates, including
          Vigilant, as Shown Through the Objective Intent of the Agreement
          and the Requirement that Meaning be Given to All Terms. ................... 16

*Confidential Material Redacted*

B. Specialized Rules of Contract Interpretation:  The Release, License, Covenant Not to Sue, Affiliates Definition, and Exception to the Other Defendants Provision are Earlier in the Agreement and More Specific than the Body of the Other Defendants Provision and therefore Take Precedence .................................................................28

C. Surrounding Circumstances May Not be Used to Contradict Contract Terms, Especially in Light of the ███████ ██████; Alternatively, the Surrounding Circumstances Support Vigilant's Interpretation of the Contract. ..................................................30

II. The District Court Erred by Adding Contractual Language to Interpret the DRN Agreement. .........................................................................33

A. Ioli Trust Never Plead Reformation or any Grounds for Reformation and Therefore the District Court Erred in Reforming the Contract .................................................................................35

B. The District Court Erred in Reforming the DRN Agreement as There are No Grounds for Reformation. ..................................................35

CONCLUSION AND STATEMENT OF RELIEF SOUGHT .............................38

ADDENDUM

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

## CONFIDENTIAL MATERIAL OMITTED

Protective orders exist governing much of the material discussed in this brief. (The parties have moved to unseal this material and are awaiting a ruling by the District Court.)  This appeal challenges the District Court's April 22, 2014 order discussing items governed by the protective order; the challenged order is not sealed or governed by a protective order.  Material which is in the District Court's unsealed order is presented without confidentiality designation.

The material omitted on pages 1, 4, 6, 10-11, 24, 28 describes provisions in an agreement between the parties; the material omitted on pages 2-4 provides discussion of identifying material omitted on page 1; the material omitted on page 4 describes consideration given by the parties in their agreement; the material omitted on pages 5, 10, 17, 33 describes arguments made by Appellant in support of summary judgment; the material omitted on pages 5, 7-9, 15, 22, 32, 34-35, 40 describes provisions of the DRN Agreement; the material omitted on page 7 and 17 describes Appellant's ownership in DRN; the material omitted on pages 9 and 33-34 describes Appellees' knowledge prior to entering into the DRN Agreement.

# TABLE OF AUTHORITIES

*Page*

**Cases**

*Allflex USA, Inc. v. Avid Identification Systems, Inc.*,
   704 F.3d 1362 (Fed. Cir. 2013) ..................................................... 2, 3, 4

*Amouri v. Southwest Toyota, Inc.*,
   20 S.W.3d 165 (Tex.App.-Texarkana 2000) ........................................37

*Avid Identification Systems, Inc. v. Crystal Import Corporation*,
   603 F.3d 967 (Fed. Cir. 2010) ....................................................... 2, 3, 4

*BP America Production Co. v. Marshall*,
   342 S.W.3d 59 (Tex., 2011) ................................................................33

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ...........................................................................16

*City of Oak Ridge North v. Mendes*,
   339 S.W.3d 222 (Tex.App.–Beaumont, 2011.)........................... 22, 30

*City of Pinehurst v. Spooner Addition Water Co.*,
   432 S.W.2d 515 (Tex.1968) ...............................................................20

*Coker v. Coker*,
   650 S.W.2d 391 (Texas 1983) ............................................... 18, 20, 28

*ConocoPhillips Co. v. Graham*,
   2012 WL 1059084 (Tex.App.-Houston [1 Dist.], March 29, 2012) ...................33

*Davis v. Davis*,
   141 Tex. 613, 175 S.W.2d 226 (1943) ...............................................33

*DSM Desotech Inc. v. 3D Systems Corp.*,
   749 F.3d 1332 (Fed. Cir. 2014) .........................................................15

*El Paso Marketing, L.P. v. Wolf Hollow I, L.P.*,
   383 S.W.3d 138 (Tex. 2012) .............................................................26

*Exxon Corp. v. Emerald Oil & Gas Co., L.C.*,
   348 S.W.3d 194 (Tex., 2011) ............................................................18

iv

*Fiess v. State Farm Lloyds*,
   202 S.W.3d 744 (Tex. 2006) ...............................................................20

*First Union Nat. Bank v. Richmont Capital Partners I, L.P.*,
   168 S.W.3d 917 (Tex.App.–Dallas, 2005) ...........................................29

*Gilbert Texas Const., L.P. v. Underwriters at Lloyd's London*,
   327 S.W.3d 118 (Tex., 2010) ....................................................... 20, 21

*Goldman v. Olmstead*,
   414 S.W.3d 346 (Tex.App.–Dallas, 2013) ...........................................36

*GPA Holding, Inc. v. Baylor Health Care System*,
   344 S.W.3d 467 (Tex.App.–Dallas, 2011) .............................................4

*Havens Realty Corp. v. Coleman*,
   455 U.S. 363 (1982) .................................................................................3

*Houston Exploration Co. v. Wellington Underwriting Agencies, Ltd.*,
   352 S.W.3d 462 (Tex., 2011) ....................................................... 31, 32

*In Re D. Wilson Construction Co.*,
   196 S.W. 3d 774, 49 Tex. Sup. Ct. J. 909 (2006) ....................... 17, 25

*In re Green Tree Servicing, LLC*,
   275 S.W.3d 592 (Tex. App. - Texarkana, 2008) ............... 20, 21, 36, 37

*Indem. Ins. Co. of N. Am. v. W.L. Macatee & Sons*,
   129 Tex. 166, 101 S.W.2d 553 (1937) ................................................37

*Knox v. Ball*,
   144 Tex. 402, 191 S.W.2d 17 (Tex. 1945) ..........................................22

*LasikPlus of Texas, P.C. v. Mattioli*,
   418 S.W.3d 210 (Tex.App.–Houston [14 Dist.], 2013) ......................37

*Lawyers Title Ins. Corp. v. Doubletree Partners, L.P.*,
   739 F.3d 848 (5th Cir. 2014),
   *aff'g in part and rev'g in part*,
   *Fidelity Nat. Title Ins. Co. v. Doubletree Partners, L.P.*,
   866 F.Supp.2d 604 (E.D.Tex., 2011) ........................................... 15, 16

*Liu v. Yang,*
   69 S.W.3d 225 (Tex.App.–Corpus Christi, 2001)................................................35

*MasTec North America, Inc. v. El Paso Field Services, L.P.*
   317 S.W.3d 431 (Tex. App. 2010) ........................................................26

*Matagorda Hosp. Dist. V. Burwell,*
   289 S.W. 3d 738 (Tex. 2006) (per curiam) ........................................................20

*Miller v. Stout,*
   706 S.W.2d 785 (1986) ........................................................26

*Nixon v. Fitzgerald,*
   457 U.S. 731 (1982) ........................................................3

*Novamedix, Ltd. v. NDM Acquisition Corp.,*
   166 F.3d 1177 (Fed. Cir. 1999) ........................................................16

*NuStar Energy, L.P. v. Diamond Offshore Co.,*
   402 S.W.3d 461 (Tex.App.–Houston [14 Dist.], 2013) ........................................20

*Orix Capital Markets, LLC v. La Villita Motor Inns, J.V.,*
   329 S.W.3d 30 (Tex.App.–San Antonio,2010) ........................................ 35, 37, 38

*Pratt-Shaw v. Pilgrim's Pride Corp.,*
   122 S.W.3d 825 (Tex.App.–Dallas 2003) ........................................................29

*Schlumberger Technology Corp. v. Baker Hughes Inc.,*
   355 S.W.3d 791 (Tex.App.–Houston [1 Dist.], 2011) ................................. 16, 17

*Schwartz v. Schwartz,*
   247 S.W.3d 804 (Tex.App.–Dallas, 2008) ................................................. 33, 35

*Senna Hills, Ltd. v. Sonterra Energy Corp.,*
   2010 WL 143408 (Tex.App.-Austin, January 15, 2010) ........................ 22, 24, 25

*Shotwell v. Morrow,*
   498 S.W.2d 432 (Tex.Civ.App., 1973) .............................................................36

*State v. Heal,*
   917 S.W.2d 6 (Tex. 1996) .................................................................................16

*Steeger v. Beard Drilling, Inc.*,
    371 S.W. 2d 684 (Texas 1963) ................................................................26

*Sun Oil Co. (Delaware) v. Madeley*,
    626 S.W.2d 726 (Tex. 1981) ...............................................................31

*Tenneco, Inc. v. Enter. Prods. Co.*,
    925 S.W.2d 640 (Tex. 1996) ...............................................................34

*Texas La Fiesta Auto Sales, LLC v. Belk*,
    349 S.W.3d 872 (Tex.App.–Houston [14 Dist.], 2011) .......................16

*Trahan v. Mettlen*,
    428 S.W.3d 905 (Tex.App.–Texarkana, 2014) ....................................38

*Vista Quality Markets v. Lizalde*,
    438 S.W.3d 114 (Tex.App.–El Paso, 2014) .........................................37

*Wolf Hollow I, LP v. El Paso Marketing, L.P.*,
    329 S.W. 3d 628 (Tex. App. – Hous. [14 Dist.], 2010) ................ 26, 34

*Worldwide Asset Purchasing, L.L.C. v. Rent-A-Center East, Inc.*,
    290 S.W.3d 554 (Tex.App.–Dallas, 2009) ..........................................20

## Statutes

28 U.S.C. § 1295(a)(1) .................................................................................1

28 U.S.C. § 1331 ..........................................................................................1

28 U.S.C. § 1338(a) .....................................................................................1

## Rules

Fed. R. App. P. 4(a)(1)(A) ...........................................................................1

Federal Rule of Civil Procedure 9 ...........................................................35

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, Appellant provides the following information:

(A)    There have been no previous appeals in this case.

(B)    Appellant is unaware of any other case that will be directly affected by the Court's decision in this case

*Confidential Material Redacted*

## STATEMENT OF JURISDICTION

### I.    Statement of General Jurisdiction.

Plaintiffs-Appellees invoked district-court jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).  Final judgment was entered on July 24, 2014. Appellant timely appealed on August 4, 2014 (Fed. R. App. P. 4(a)(1)(A)). This Court has appellate jurisdiction under 28 U.S.C. § 1295(a)(1).

### II.    Statement of Case in Controversy:  Ruling in Vigilant's Favor will Result in Adverse Outcome for Ioli Trust and Thus Presents a Justiciable Controversy.

This case comes before the Court following entry of a final judgment ████ ███████████████████████████████████████████████████████████████████ ███████████████ and this case continues to present an appealable matter of controversy of a question of law.  Vigilant provides this discussion merely to address any concerns this Court may have as to justiciability; Vigilant does not anticipate that Ioli Trust will challenge the appealability of the final judgment as ███████████████████████████████████████████████████

As set forth in the final judgment, Vigilant has preserved its right to appeal the District Court's denial of its summary judgment motion in which Vigilant asserted it was released and licensed under the DRN Agreement.  Generally, a justiciable controversy remains after settlement where the parties have agreed that an appeal may be maintained and the appellee is able to oppose the appeal.  *Avid Identification Systems, Inc. v. Crystal Import Corporation*, 603 F.3d 967, 971 (Fed.

*Confidential Material Redacted*

Cir. 2010) (appeal not moot despite settlement and despite appellee's choice to not submit a brief; "A live controversy still exists because [the appellee] remained free under the settlement agreement to oppose this appeal on the merits").

Under limited circumstances, this Court may choose not to hear cases with ███████████████ For example, in *Allflex USA, Inc. v. Avid Identification Systems, Inc.*, 704 F.3d 1362 (Fed. Cir. 2013), this Court held that ████████ ███████████████████████████ However, the *Allflex* case involved unusual facts. In *Allflex,* the appellant could not show that an appellate decision would change an adverse outcome. Avid, the appellant in *Allflex* (and ironically, the appellant in *Avid Identification Systems, Inc. v. Crystal Import Corporation* in which this Court allowed ████████████████████████████ ███████████████████ Avid sought reversal of sanctions and inequitable conduct rulings by the District Court. However, with respect to sanctions, the District Court had merely ruled that Avid "'should be sanctioned'" but had not actually imposed any sanctions. *Allflex*, 704 F.3d at 1365. With respect to the inequitable conduct claim, the District Court had made a ruling against Avid on one element (materiality) but had not made an adverse ruling on another required element (intent). Thus, there was no adverse finding of inequitable conduct and even if this Court had reversed the materiality ruling, such a reversal would not change the case outcome. *Allflex,* 704 F.3d at 1365-1366.

2

*Confidential Material Redacted*

In *Avid*, the appellant buttressed its argument that a reversal by the Federal Circuit would change the case outcome by pointing out the $50,000 settlement consideration which was contingent on this Court's decision. This Court noted that generally liquidated damage settlements dependent on an appeal where the parties remain adverse can prevent mootness. *Allflex*, 704 F.3d at 1367, citing to *Nixon v. Fitzgerald*, 457 U.S. 731 (1982) and *Havens Realty Corp. v. Coleman,* 455 U.S. 363 (1982). However, in *Allflex*, the $50,000 dependent on appeal was not a liquidated damages amount as it bore no relation to the issues on appeal, especially as there were multiple issues "and success on more than one of those issues will not increase the amount of Avid's rebate above $50,000." *Allflex*, 704 F.3d at 1368. Accordingly, the contingent $50,000, by itself, did not create a situation where this Court's decision would change the outcome.

Thus, under Federal Circuit precedent, this Court will review ███████████ ████████ if this Court's decision would change the outcome of the case. As Vigilant seeks an order reversing denial of its motion for summary judgment, this Court, if it rules in Vigilant's favor, will change the outcome of the case and will result in judgment being entered in favor of Vigilant at the District Court ██████ ███████████████████████████████████████████████████████████ ██████████████████████████████████

*Confidential Material Redacted*

Furthermore, as the parties' agreement states that ██████████████████

██████████████████████████████████████████████████ it is a

typical liquidated damages clause providing the parties' reasonable estimate of

what litigated damages might amount to. The courts treat liquidated damage

provisions as valid where "the harm caused by the breach is incapable or difficult

of estimation, and … the amount of liquidated damages called for is a reasonable

forecast of just compensation." *GPA Holding, Inc. v. Baylor Health Care System,*

344 S.W.3d 467, 475 (Tex.App.–Dallas, 2011).  Thus, under *Allflex*, Vigilant's

████████████████ presents an entirely separate and additional ground for

this Court's review.

Whether based on the straightforward *Avid* analysis that this Court's

decision will change the outcome of the case by granting Vigilant summary

judgment, or based on the *Allflex* contingent settlement amount analysis, this

appeal presents a contested controversy for Federal Circuit review.[1]

---

1If this Court disagrees with this jurisdiction analysis, in light of the settlement and the final judgment's appealability statement, the judgment should be vacated and the case remanded for trial.

*Confidential Material Redacted*

## STATEMENT OF THE ISSUES

1.    Did the District Court err in interpreting the DRN Agreement to preclude Appellant, a DRN affiliate, from benefitting from the DRN Agreement █ ████████████████ despite the DRN Agreement's provisions granting affiliates license rights, a release, and covenant not to sue?

2.    Did the District Court err in reforming the DRN Agreement to add an additional clause excluding other litigants from affiliate status despite the fact that only one party contested the agreement as written, ████████████████ ████████████ neither party plead fraud, mistake, or reformation, and both parties were ████████████ business entities represented by counsel?

## STATEMENT OF THE CASE

In 2010, Appellees Edward D. Ioli Trust and Avigilon Corporation ("Ioli Trust") commenced a patent infringement lawsuit against 20 defendants, including Digital Recognition Network ("DRN") and Appellant Vigilant Video, Inc. ("Vigilant").  In 2012, DRN entered into a settlement agreement with Ioli Trust whereby DRN and its affiliates obtained a license and a release ("DRN Agreement").  Vigilant was a DRN affiliate; accordingly, Vigilant moved for summary judgment ████████████████████ of the DRN Agreement.

In responding to the motion for summary judgment, Ioli Trust contended that even though Vigilant was a DRN affiliate, it could not benefit from the DRN

*Confidential Material Redacted*

Agreement due to a provision allowing Ioli Trust to pursue litigation against other defendants.  In opposition, Vigilant contended that the other defendants provision was limited by its introductory clause which excepted benefits provided elsewhere in the DRN Agreement:  "Except as specifically set forth herein ...."

███████████

███████████

█████████

The District Court concluded that the parties to the DRN Agreement intended the release and license for DRN affiliates not to apply to the patent infringement defendants other than DRN.  The District Court also concluded that the parties to the DRN Agreement intended the wording of the agreement to include a provision that a license and release had been granted "extending to all affiliates, past, present and future, *except* any affiliates who were involved in litigation with Plaintiffs at the time of the Agreement's execution." (Emphasis by District Court.)  Both of the District Court's conclusions were in error.

The District Court denied the motion for summary judgment, and, pursuant to the parties' agreement, Vigilant initiated this appeal.

*Confidential Material Redacted*

## STATEMENT OF FACTS

This matter concerns the enforcement of a settlement agreement ("DRN

Agreement") in favor of Digital Recognition Network ("DRN") and its affiliate,

Appellant Vigilant Video, Inc. ("Vigilant").



(A 118.)

(A 118.)

A 120.)

In 2010, Appellees Edward D. Ioli Trust and Avigilon Corporation ("Ioli

Trust") filed suit in the Eastern District of Texas against 20 defendants, including

DRN and Vigilant, for patent infringement.   (A 8.)  On May 14, 2012, Ioli Trust

and DRN entered into a settlement agreement which included a release, license,

and covenant not to sue for DRN and its "affiliates."  The settlement specified the

following:

> Plaintiffs hereby release Defendant **and each of their Affiliates** ... from any and all liabilities, damages, costs, expenses, known or unknown, suspected or unsuspected, arising prior or subsequent to the Effective Date of the Agreement that Plaintiffs have or may have asserted relating to infringement of any Licensed Patent ...." (A3, 102; emphasis added by District Court.)

*Confidential Material Redacted*

███████████████████... Plaintiffs grant to
Defendant **and its respective Affiliates** ... a ... license in, to and under
the Licensed Patents ....”  (A4, 102; emphasis added by District
Court.)

███████████████████████████. Plaintiffs
covenant that they will refrain from commencing, instituting or
**prosecuting any lawsuit, action, proceeding, claim, investigation,
or demand** of any kind or character against Defendant **and each of
its Affiliates** related to or for infringement of the licensed Patents ....”
(A4, 103; emphasis added.)

An “affiliate” was defined in the settlement agreement as follows:

█████████████ any **former, current or future parent** ... or
any other corporation ... **formerly, currently or in the future** ...
controlling a Party, ... where control means direct or indirect
ownership or control (whether through contract or otherwise) of more
than fifty percent (50%) of the stock or shares entitled to vote..”
(A4,101-102; emphasis added.)

Later in the DRN Agreement, there is the following provision:

“Other Defendants in the Litigation.  **Except as specifically set
forth herein**, this Agreement shall not affect Plaintiffs’ ability or right
to pursue claims against other defendants in the Litigation. The Parties
specifically acknowledge that the consideration paid herein is not
intended to compensate Plaintiffs for any claims asserted by Plaintiffs
against those other defendants.” (A4, 104; emphasis added; this
provision is referred to as the “Other Defendants provision”
hereinafter.)

████████████████████████████ (A101-112.)

Additionally, the DRN Agreement contains ████████████████

████████████████████████████████████████

████████████████████████ (A110.)  Finally, the

*Confidential Material Redacted*

DRN Agreement includes as an exhibit a proposed dismissal order dismissing DRN from the lawsuit. (A6-7,113.)

While Vigilant was not named expressly as an affiliate in the DRN Agreement, Ioli does not dispute that Vigilant is a DRN affiliate under the terms of the DRN Agreement. (A5, 114.) As noted by the District Court, the parties agreed that Vigilant is a DRN affiliate and DRN affiliates are released from liability for patent infringement. (A5.) While the DRN Agreement extends to all affiliates, whether known or unknown, current or future, ██████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████ (A115.)

On September 5, 2012, after the DRN Agreement was signed, Vigilant moved to amend its Answer to allege that as a result of the DRN Agreement releasing DRN's affiliates, Vigilant had obtained a license to the patent and had been released from the litigation. (A57, A133-137.) The District Court granted Vigilant's amendment on December 19, 2012. (A63.) Ioli Trust never plead any defense or counterclaim to the amended answer such as fraud, mistake, accident, ambiguity, rescission, reformation, etc. (A63-65.)

On October 30, 2012, Vigilant filed a motion for summary judgment on the grounds that it had a valid license to the patents in suit as it was a DRN affiliate.



(A5-6, 61.)

(A5-7, 89-94, 127, 129).

(A90-91, 125-126, 130)

.  (A123-124, 126-130)

(A125-127, 130.)

A138, 141, 143-144).

A143*).*

*Confidential Material Redacted*



(A138*)*

(A139, 153.)

A143.)

On April 22, 2014, the District Court issued an order denying summary judgment.  (A143.)  The District Court acknowledged that Ioli conceded that Vigilant was an affiliate of DRN as defined in the DRN Agreement.  (A4-5.) Despite Vigilant's status as an affiliate of DRN and the DRN Agreement's license granted to current or future affiliates, the Court still went on to conclude that Vigilant did not obtain a license under the DRN Agreement.  (A6.)  In denying Vigilant's motion for summary judgment, the District Court considered two different interpretations of the DRN Agreement (neither party argued that the

contract was ambiguous). The District Court phrased the dispute as involving two

interpretations of the "other defendants" provision in the DRN Agreement.  The

District Court summed up the dispute as follows:

> "Defendants contend, essentially, that the 'except as
> specifically set forth herein' language [at the beginning of the Other
> Defendants provision] subordinates the parties' covenants regarding
> other defendants to the explicit provisions for affiliation and release of
> affiliates contained in the rest of the contract.  Plaintiffs contend that
> the exception language can only be satisfied by 'specific' mention of
> other defendants, and that the affiliation language of the contract is
> too general to qualify, especially in light of Vigilant being a named
> defendant in [t]his case." (A6.)

The District Court reasoned that it was "a bridge too far for this Court to

cross" to conclude that there was a "true meeting of the minds" that Vigilant

should benefit from the DRN Agreement . (A6.) The District Court also noted that

"it strains reason to ignore the Agreement's failure to identify Vigilant by name."

(A6.)  The District Court concluded that the parties to the DRN Agreement

intended the release and license[2] for DRN affiliates not to apply to the patent

infringement defendants other than DRN.  (A6-7.) "The word 'specifically' in the

phrase 'except as *specifically* set forth herein' is intended to ensure that only

language within the contract that *clearly* identifies and relates to other defendants

may alter the litigation status quo, rather than language that applies to the parties

---

2 The District Court did not directly address the covenant not to sue provision;
though it did quote from the covenant not to sue in its list of relevant provisions.
(A4.) Vigilant presumes the District Court denies its rights under this provision too
based upon the denial of the motion for summary judgment.

generally." (A6; emphasis by District Court.) The District Court also concluded

that the parties to the DRN Agreement intended the wording of the agreement to

include a provision that a license and release had been granted "extending to all

affiliates, past, present and future, *except* any affiliates who were involved in

litigation with Plaintiffs at the time of the Agreement's execution." (Emphasis by

District Court.) (A7.) Accordingly, on April 22, 2014, the District Court denied

Vigilant's motion for summary judgment.  (A3, 7.)

    None of the defendants went to trial in this matter.  (A45, 48, 53, 54, 58, 60

(orders of dismissal).) On July 24, 2014, final judgment against Vigilant was

entered; the judgment states that the "Court specifically acknowledges that

Defendant has preserved its right to appeal the Court's Ruling on Defendant's

Motion for Summary Judgment …." (A1-2, 65.) On August 4, 2014, Vigilant

initiated this appeal.  (A65.)

## SUMMARY OF ARGUMENT

    1.    The District Court erred in interpreting the DRN Agreement to

preclude Appellant, an affiliate of DRN, from benefitting from the DRN

Agreement despite the DRN Agreement's provisions granting affiliates license

rights, a release, and covenant not to sue.   Appellees may not now benefit

themselves by asserting that they did not intend to release DRN affiliates as Texas

courts enforce the objective, not subjective, intent as expressed in the four corners

of a contract. In determining intent, a court must give meaning to all provisions in a contract. The District Court's interpretation of the DRN Agreement gives effect to a provision allowing Appellees some protection to pursue "other defendants" such as Vigilant, but does not give meaning to the introductory clause to the "other defendants" provision which limits the Appellee's rights to continue litigation, nor to the full definition of affiliate, and thus the interpretation is incorrect. The District Court's interpretation ignores DRN's intent as expressed in the contract.

Furthermore, the District Court neglected to apply guidelines for contract construction in that it did not give precedence to earlier provisions over later provisions and it did not treat as specific and of greater weight the multiple provisions providing for affiliate rights and providing a limitation to the Other Defendants provision.

Finally, to the extent the District Court's order may reflect consideration of surrounding circumstances leading up to the DRN Agreement, Appellant asserts this is erro ███████████████████████████████████; alternatively, the surrounding circumstances show that Appellees had reason to know that Appellant was an affiliate who would claim benefits under the DRN Agreement.

2.    The District Court erred in reforming the DRN Agreement to add an additional clause to eliminate Appellant's rights by limiting the release of affiliates to affiliates not involved in litigation despite the fact that only one party contested

*Confidential Material Redacted*

the agreement as written, the agreement contained ████████████, neither

party plead fraud, mistake, or reformation, there was no evidence of fraud or

mistake, and both parties were ██████████ business entities represented by

counsel.

## STANDARD OF REVIEW

This Court reviews the grant or denial of summary judgment under the law

of the regional circuit governing the District Court. *DSM Desotech Inc. v. 3D*

*Systems Corp.,* 749 F.3d 1332, 1338-1339 (Fed. Cir. 2014). Thus, as this case is an

appeal from the Eastern District of Texas, the law of the Fifth Circuit applies.

Under Fifth Circuit law, the grant or denial of a motion for summary judgment is

reviewed de novo. *Lawyers Title Ins. Corp. v. Doubletree Partners, L.P.*, 739 F.3d

848, 856 (5th Cir. 2014), *aff'g in part and rev'g in part, Fidelity Nat. Title Ins. Co.*

*v. Doubletree Partners, L.P.,* 866 F.Supp.2d 604 (E.D.Tex., 2011). The Fifth

Circuit applies the same summary judgment analysis as the District Court. *Id.*

According to the Fifth Circuit, "Summary judgment is appropriate 'if the movant

shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law.'... 'When assessing whether a dispute to

any material fact exists, we consider all of the evidence in the record but refrain

from making credibility determinations or weighing the evidence.' We also

'consider all evidence in a light most favorable to the non-moving party and draw

all reasonable inferences in favor of the non-moving party.'" *Id.* (internal citations omitted). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).

In addition, this matter involves the interpretation of a contract. The Federal Circuit applies the law of the regional circuit for matters such as interpretation of a contract which do not implicate issues unique to patent law. *Novamedix, Ltd. v. NDM Acquisition Corp.,* 166 F.3d 1177 (Fed. Cir. 1999). Under Fifth Circuit law, interpretation of a contract is a question of law which is reviewed de novo. *Schlumberger Technology Corp. v. Baker Hughes Inc.,* 355 S.W.3d 791, 802 (Tex.App.–Houston [1 Dist.], 2011); *Texas La Fiesta Auto Sales, LLC v. Belk,* 349 S.W.3d 872, 879 (Tex.App.–Houston [14 Dist.], 2011). No deference is given to the lower court's resolution of a question of law. *State v. Heal*, 917 S.W.2d 6, 9 (Tex. 1996).

## ARGUMENT

I.    **The District Court Erred in Interpreting the DRN Agreement's License and Release for Affiliates as Not Applying to Affiliate Vigilant.**

A.    **Under Basic Rules of Contract Construction, the DRN Agreement License and Release Applies to all DRN Affiliates, including Vigilant, as Shown Through the Objective Intent of the Agreement and the Requirement that Meaning be Given to All Terms.**

This case presents to the Federal Circuit the task of interpreting the DRN Agreement's release, license, and covenant not to sue for all past, current and

**Confidential Material Redacted**

future DRN affiliates.  Vigilant, ███████████████████████████████

███████████████████████████████████████ sought enforcement ███████

███████████████ of the DRN Agreement through a summary judgment motion.  In

denying Vigilant's motion for summary judgment, the District Court considered

two different interpretations of the DRN Agreement. One version, presented by

Vigilant, made effective every portion of the DRN Agreement as written.  The

other version, presented by Ioli Trust, required the addition of a new contractual

term limiting the contractual definition of affiliates and rejecting a portion of the

written terms of the DRN Agreement.  The District Court accepted Ioli Trust's

interpretation: According to the District Court's order, the DRN Agreement's

license and release for affiliates should be read to include the following language:

*"except* any affiliates who were involved in litigation with Plaintiffs at the time of

the Agreement's execution." (Term and emphasis by the District Court.)

This Court reviews the District Court's interpretation de novo and without

deference. *Schlumberger Technology Corp.* 355 S.W.3d at 802; *Heal*, 917 S.W.2d

at 9.  Moreover, Ioli Trust's presentation of a differing interpretation, with or

without an addition of a new contract term, does not mean the contract is

ambiguous.  "Ambiguity does not exist merely because the parties assert forceful

and diametrically opposing interpretations." *In Re D. Wilson Construction Co.*,

196 S.W. 3d 774, 781, 49 Tex. Sup. Ct. J. 909 (2006).  "If the written instrument is

so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law." *Coker v. Coker,* 650 S.W.2d 391, 393 (Texas 1983).

The District Court, in its order, did not state that the DRN Agreement herein was ambiguous.  Additionally, neither party argued or pled that the DRN Agreement was ambiguous.  "Where an ambiguity has not been raised by the parties, the interpretation of a contract is a question of law."[3] *Exxon Corp. v. Emerald Oil & Gas Co., L.C.,* 348 S.W.3d 194, 214 (Tex., 2011).

As noted by the District Court, the parties herein agreed that Vigilant is a DRN affiliate and DRN affiliates are released from liability for patent infringement pursuant to the DRN Agreement.  The DRN Agreement provides on page 1 that affiliates include "former, current, or future" parent companies.  The DRN Agreement provides on page 2 that the DRN affiliates are released from liability for infringement, again on page 2 it grants DRN affiliates a license to the patents in suit, and on page 3 it further provides that the DRN affiliates have a covenant not to sue.  None of this is disputed.  Instead, the dispute centers on interpretation of the DRN Agreement's provision regarding Other Defendants on page 4 of the

---

[3]Texas case law has not always been consistent on whether the trial court may sua sponte decide a contract is ambiguous. *See Coker v. Coker* 650 S.W.2d 391 (Texas 1983) (both parties asserted the contract was unambiguous, but the Texas Supreme Court determined the contract was ambiguous).

DRN Agreement:

> "Other Defendants in the Litigation.  Except as specifically set forth herein, this Agreement shall not affect Plaintiffs' ability or right to pursue claims against other defendants in the Litigation. The Parties specifically acknowledge that the consideration paid herein is not intended to compensate Plaintiffs for any claims asserted by Plaintiffs against those other defendants."

Vigilant contends that this provision means that other defendants in the litigation are not effected by the DRN Agreement, except as specifically set forth in other provisions of the DRN Agreement (such as the provisions defining affiliates and providing a release and license to affiliates).  Ioli Trust contends, and the District Court concluded, that this provision means that Ioli Trust may pursue claims against all non-DRN defendants in the litigation, regardless of whether or not they are a defined affiliate.

There were 20 defendants in this lawsuit.  The phrase in the Other Defendants provision that "this Agreement shall not affect Plaintiffs' ability or right to pursue claims against other defendants in the Litigation" protects Ioli Trust's right to pursue litigation against (among others) the many non-DRN affiliated defendants.  The phrase immediately preceding this reservation, "Except as specifically set forth herein," protects the release, license and covenant not to sue obtained by the DRN affiliates as set forth on page 2 of the DRN Agreement; the phrase creates an exception to an exception.

A Court's primary concern in interpreting a contract "is to ascertain the true intentions of the parties **as expressed in the instrument**." *Coker,* 650 S.W.2d at 393 (emphasis added); *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 753 (Tex. 2006). All provisions in the contract must be given effect. *Id.; Worldwide Asset Purchasing, L.L.C. v. Rent-A-Center East, Inc.,* 290 S.W.3d 554, 560 (Tex.App.– Dallas, 2009). The subjective intent of the parties is irrelevant. *NuStar Energy, L.P. v. Diamond Offshore Co.,* 402 S.W.3d 461, 466 (Tex.App.–Houston [14 Dist.], 2013); *Matagorda Hosp. Dist. V. Burwell*, 289 S.W. 3d 738, 740 (Tex. 2006) (per curiam); *City of Pinehurst v. Spooner Addition Water Co.,* 432 S.W.2d 515, 518 (Tex.1968). "Courts strive to honor the parties' agreement and not remake their contract by reading additional provisions into it." *Gilbert Texas Const., L.P. v. Underwriters at Lloyd's London,* 327 S.W.3d 118, 126 (Tex., 2010).

Even though a party might obviously have preferred to have a different contract provision, it is the actual written term which controls. For example, in *Gilbert*, the Texas Supreme Court interpreted an insurance policy term as excluding coverage for the insured even though one may safely presume the insured intended broad and inclusive coverage. *See also In re Green Tree Servicing, LLC*, 275 S.W.3d 592 (Tex. App. - Texarkana, 2008) (debtor who made unilateral mistake in agreeing to arbitration clause is not entitled to relief).

*Confidential Material Redacted*

Applying this standard to the DRN Agreement, the intentions of the parties are determined by the terms of the DRN Agreement, not by what might or might not have been a rational or informed position for one party.  Thus, it is irrelevant whether or not Ioli Trust subjectively intended to release Vigilant with other affiliates.  The District Court based its interpretation in favor of Ioli Trust in part because "it strains reason to ignore the Agreement's failure to identify Vigilant by name."   However, it does not matter whether both parties acted rationally or are happy with the result of the bargain; it simply matters that the bargain was made.  Just as the debtor in *Green Tree* was stuck with an arbitration clause it may not have intended to accept, and just as the insured in *Gilbert* was stuck with an exclusion clause it may not have intended to accept, Ioli Trust is stuck with the Release, License, Covenant Not to Sue, and Other Defendants provisions it may or may not have intended to accept.

Furthermore, the District Court focused on what Ioli Trust may have intended in entering into the agreement, yet the District Court does not address DRN's intent.  The District Court erred in interpreting the DRN Agreement to coincide with an interpretation which Ioli Trust might have been rationally expected to bargain for, yet this interpretation ignores the intention expressed by both DRN and Ioli Trust in the agreement. Legally, neither party's subjective intent is relevant, especially in light of the DRN Agreement's ███████████

Evidence outside the DRN Agreement may not be considered. *City of Oak Ridge North v. Mendes,* 339 S.W.3d 222, 232 (Tex.App.–Beaumont, 2011.) Vigilant's interpretation of the contract is also the only interpretation which gives full meaning to each provision as required under Texas law. Under Vigilant's interpretation, the portion of the Other Defendants provision which reads "except as specifically set forth herein" means that the Other Defendants provision applies except as it might contradict other portions of the agreement (namely the provision defining affiliates, the provision releasing DRN and its affiliates, and the provision licensing DRN and its affiliates). Contrast this with the District Court's interpretation whereby the express term "except as specifically set forth herein" is undercut. Instead, the District Court attempts to explain what the parties meant to write as opposed to what they actually wrote: "The word 'specifically' in the phrase 'except as *specifically* set forth herein' is intended to ensure that only language within the contract that *clearly* identifies and relates to other defendants may alter the litigation status quo, rather than language that applies to the parties generally." (Emphasis by District Court.) However third-party beneficiaries, such as the affiliates in the DRN Agreement, need not receive mention by their actual name. *Senna Hills, Ltd. v. Sonterra Energy Corp.,* 2010 WL 143408, *11-14 (Tex.App.-Austin, January 15, 2010) (A214-218); *Knox v. Ball*, 144 Tex. 402, 412, 191 S.W.2d 17, 23-24 (Tex. 1945).

*Confidential Material Redacted*

The problem with the District Court's interpretation is that this is not what the contract says. Instead the contract releases DRN and its affiliates, with no limitation based on litigation status. ████████████████████████ ███████████████████████████████████████████████████ █████████████████████ Ioli could have done the same in the DRN Agreement. Moreover, the District Court's rereading of the exception clause makes it meaningless as there are no "other" defendants which the DRN Agreement "clearly identifies." Thus, Ioli Trust and the District Court's interpretation does not give full meaning to all provisions in the contract as required by Texas law.

The District Court also writes that "Vigilant's reading has the clause essentially reading 'except as set forth in this contract, the terms of this contract shall not apply'." (A6.) The District Court's circular characterization does not match the actual terms of the contract. Instead, as explained above, other defendants are released and licensed, "except as specifically set forth herein." Earlier sections of the contract provide that the entities released, licensed, and given a covenant not to sue are DRN and its affiliates. Pursuant to the Other Defendants provision, the remaining 18 defendants are not released and licensed as they are not DRN affiliates.

The contrasting interpretations are diagrammed as follows:

A.  Result of Vigilant's interpretation:

| Main body of Other Defendants Provision: | Exception clause to Other Defendants Provision: |
|---|---|
| 18 Non-DRN Affiliates who are litigants are not released or licensed or receive covenant not to sue | DRN Affiliates (Vigilant) |

B.  Result of the District Court's interpretation:

| Main body of Other Defendants Provision: | Exception clause to Other Defendants Provision: |
|---|---|
| 19 Non-DRN litigants are not released or licensed or receive covenant not to sue | No entities can ever qualify (DRN cannot be the "other" defendant if it is the named defendant) |

The facts of this case are remarkably similar to the facts of *Senna Hills, Ltd.*

*v. Sonterra Energy Corp.,* 2010 WL 143408 (Tex.App.-Austin, January 15, 2010)

(A203-222).  In *Senna Hills*, Senna Hills and Southern Union Company entered

into an agreement whereby Southern Union operated a propane distribution system

in the Senna Hills subdivision and Southern Union agreed to pay Senna Hills an

easement fee. Southern Union sold its interest to ONEOK, and ONEOK then sold

to Sonterra.  Senna Hills sought relief as a third-party beneficiary of an agreement

between Sonterra and ONEOK.  That agreement included the following provision:

"No Third Party Beneficiaries …Except as otherwise provided in this Agreement,

nothing contained in this Agreement shall entitle anyone other than [ONEOK] or

[Sonterra] … to any claim, cause of action, remedy or right of any kind whatsoever." *Id.* at *11, (A215.) Elsewhere in the agreement Sonterra agreed to pay the easement fee.[4]  The Texas Court of Appeals stated, "we cannot ignore the clause '[e]xcept as otherwise provided in this Agreement …'" and allowed Senna Hills to benefit from its third-party status and enforce the easement fees despite the inclusion of the provision expressly disavowing third-party beneficiaries and the fact that the agreement did not expressly name Senna Hills as a third-party beneficiary. *Id.* at *11-12 (A214-216).   Just as Senna Hills was a third-party beneficiary able to enforce its benefits despite restrictions on who could benefit from the release, Vigilant is also entitled to enforce its benefits from the DRN release.

Another case which sheds light on the interpretation of the exception clause is *In re D. Wilson Const. Co.,* 196 S.W.3d 774 (2006).  In that case, a contractor sought to enforce an arbitration provision against a school district.  The disputed contract also included a provision for school district resolution of disputes: "Except as otherwise provided in this Contract, any dispute concerning a question of fact arising under this contract, which is not disposed of by agreement shall be decided by [the school district] ...." and provided appeal opportunities.  *Id.* at 782. Accordingly, the school district argued that to enforce the arbitration clause would

---

4 Senna Hills lost its claim for regular breach of contract against Sonterra as the promise to pay was made to Oneok, not to Senna Hills. *Id.*, at 7; (A210-211.)

make the school district resolution provision meaningless.  The Court disagreed

and held that in light of the "except" clause and the placement in the agreement of

the school district resolution provision, the school district resolution provision was

subordinate to the arbitration provision.  *Id.*  Just as with Vigilant, the exception

clause controls the provision relied on by the opposing party.  *See also Miller v.*

*Stout*, 706 S.W.2d 785, 786-87 (1986) (exception clause to an exception clause

controls); *MasTec North America, Inc. v. El Paso Field Services, L.P.* 317 S.W.3d

431, 436, 448 (Tex. App. 2010); *Steeger v. Beard Drilling, Inc.*, 371 S.W. 2d 684,

687 (Texas 1963).

This is not to say that every exception clause always has an effect.  Vigilant

acknowledges that sometimes there are no other provisions in the agreement that

meet the terms of the exception clause.  For example, in *Wolf Hollow I, LP v. El*

*Paso Marketing, L.P.*, 329 S.W. 3d 628 (Tex. App. – Hous. [14 Dist.], 2010)

("*Wolf I", reversed, El Paso Marketing, L.P. v. Wolf Hollow I, L.P.,* 383 S.W.3d

138 (Tex. 2012) ("*Wolf II")*, Wolf Hollow made three claims for consequential

damages from breach of a contract which barred consequential damages "[e]xcept

as specifically set forth here herein."  The Texas Court of Appeals concluded that

consequential damages were not recoverable as no other specific provisions were

set forth in the agreement for consequential damages.  *Wolf I,* 329 S.W.3d at 639-

641. However, the Texas Supreme Court reversed the decision and concluded that

*Confidential Material Redacted*

consequential damages for one of the three claims (the replacement power claim)

were recoverable under other provisions of the agreement, thus giving effect to the

exception clause as it related to the replacement power claim. *Wolf II*, 383 S.W.3d

at 140-146. Moreover, even the *Wolf I* court acknowledged that it is a court's goal

to "give effect to all provisions." *Wolf I*, 329 S.W. 3d at 636. Just as in *Wolf II*,

the exception clause in the DRN Agreement should not be determined to be

meaningless.

Finally, the District Court based its decision in part on the dismissal which

DRN and Ioli Trust presented to the District Court for entry because this dismissal

does not mention Vigilant. Yet Vigilant was not a party to the DRN Agreement,

and therefore it makes sense that Vigilant is not mentioned in the dismissal. It is

important to keep in mind that Ioli Trust and DRN made no list at all of affiliates

for the license, release, or covenant not to sue. If they were truly only planning on

licensing or releasing *named* affiliates, there would have been a list of affiliate

names.[5]

While the District Court based its decision on its perceived intent of the

parties, in divining that intent the District Court ignored the huge breadth of the

released "affiliates." The release governs not only current affiliates, but also

---

[5] There could have been a list of named affiliates ██████████████████████
████████████████████████████████████████

"former" and "future" affiliates. Ioli Trust was perfectly willing to allow an affiliate from 10 years ago to now have a free license, and it was perfectly willing to allow an unknown affiliate who appears on the scene two years in the future to have a free license. Ioli Trust was not exactly being stingy with its licenses for affiliates. Accordingly, it is logical that the parties intended that DRN affiliates were entitled to a license, regardless of any other factors. Ioli Trust's refusal to accept the consequence of its own broad language does not negate the fact that Ioli Trust agreed to that language. The District Court's interpretation of the intent expressed in the contract is, as a matter of law, incorrect and should be reversed.

**B.    Specialized Rules of Contract Interpretation:  The Release, License, Covenant Not to Sue, Affiliates Definition, and Exception to the Other Defendants Provision are Earlier in the Agreement and More Specific than the Body of the Other Defendants Provision and therefore Take Precedence**

In addition to the basic contract interpretation rules set forth above, there are some specialized rules which Texas courts apply to contract interpretation.

"In harmonizing … provisions, terms stated earlier in an agreement must be favored over subsequent terms." *Coker,* 650 S.W. 2d at 393. The affiliate, release, licensing, and covenant not to sue provisions are presented on pages 1 through 3 of the DRN Agreement; the Other Defendants provision is presented on page 4. Accordingly, the Other Defendants provision is subordinate to the affiliate, release, licensing and covenant not to sue provisions which provide protection for Vigilant.

Another rule of contract interpretation is that "specific and exact" terms are given "greater weight" than general terms. *First Union Nat. Bank v. Richmont Capital Partners I, L.P.,* 168 S.W.3d 917, 924 (Tex.App.–Dallas, 2005); *Pratt-Shaw v. Pilgrim's Pride Corp.,* 122 S.W.3d 825, 829 (Tex.App.–Dallas 2003). While the District Court herein did not expressly discuss this rule of interpretation, it did acknowledge that the parties disputed whether "the affiliation language of the contract is too general to qualify" for the exception language in the Other Defendants provision which Vigilant relied on.  (A6.)

However, the District Court ignored the importance of the Affiliates provision in light of its status as a definition for the entire contract.  As a definition provision, it is the quintessential specific provision:  the definition provides the specific meaning for the use of "affiliates" in the DRN Agreement.  To conclude otherwise would defeat the purpose of providing a definition.  If Ioli Trust intended Affiliates to not include litigants in the patent lawsuit, the place for that restriction would have been in the definition of affiliates.  Instead, "affiliates," though specifically defined in the Settlement Agreement and used in the Release, License, and Covenant Not to Sue provisions, are now to be rewritten by Ioli Trust and the District Court as "Affiliates, except for defendants currently involved in this litigation …"

*Confidential Material Redacted*

Moreover, the portions of the Other Defendants provision which Ioli Trust

and the District Court might argue is "specific" must be read as subject to the even

more specific introductory clause of the Other Defendants provision ("except as

specifically set forth herein").  The Other Defendants provision makes an

exception to entities who may claim to be released; the introductory clause makes

an exception to the exception.  The introductory clause is more specific than the

provision which it modifies.  In other words, even if this Court were to conclude

that the Other Defendants provision is more specific than the Affiliates, Release,

License, and Covenant Not to Sue provisions, the introductory clause to the Other

Defendants provision provides an even more specific limitation to the general

portions of the Other Defendants provision which Ioli Trust must rely upon.

By failing to properly apply the above rules in aid of contract interpretation,

the District Court erred in its interpretation of the DRN Agreement.

**C.    Surrounding Circumstances May Not be Used to Contradict
Contract Terms, Especially in Light of the ▉▉▉▉▉▉▉ ▉
▉▉▉▉▉▉ Alternatively, the Surrounding Circumstances Support
Vigilant's Interpretation of the Contract.**

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉Accordingly, the

parties' intent generally cannot be shown by evidence outside of the four corners of

the DRN Agreement.  *City of Oak Ridge North v. Mendes,*  339 S.W.3d 222, 232

(Tex.App.–Beaumont, 2011) (evidence about city council's intent and agreement

30

**Confidential Material Redacted**

in making prior incentive payments to city manager was inadmissible for interpretation of employment contract due to integration clause in employment contract.)

The circumstances surrounding ████████████████████████ may be examined in limited situations. *Houston Exploration Co. v. Wellington Underwriting Agencies, Ltd.,* 352 S.W.3d 462, 469 (Tex., 2011). "In the usual case, the instrument alone will be deemed to express the intention of the parties for it is objective, not subjective, intent that controls." *Sun Oil Co. (Delaware) v. Madeley,* 626 S.W.2d 726, 731 (Tex. 1981) (internal citation omitted) "[P]arol evidence is not admissible to render a contract ambiguous, which on its face, is capable of being given a definite certain legal meaning. This rule obtains even to the extent of prohibiting proof of circumstances surrounding the transaction when the instrument involved, by its terms, plainly and clearly discloses the intention of the parties, or is so worded that it is not fairly susceptible of more than one legal meaning or construction." *Id.*

The District Court did not address any of the surrounding circumstances leading up to the DRN Agreement. Yet, it appears the surrounding circumstances may have colored the District Court's decision. To the extent that Ioli Trust's presentation of surrounding circumstances may have affected the District Court's

31

*Confidential Material Redacted*

decision, Vigilant submits that those surrounding circumstances were improperly considered.

Vigilant further submits that the surrounding circumstances actually support the contract interpretation put forth by Vigilant, not Ioli Trust.  In light of the parole evidence rule, even if surrounding circumstances are considered, they may only "inform, rather than vary from or contradict, the contract text."  *Houston Exploration Co.*, 352 S.W.3d at 469.  The surrounding circumstance arguably to be considered are that



Vigilant is still entitled to enforce its rights as third-party beneficiary.  "A third-party beneficiary may be identified in the agreement by class or category of persons, all of whom may not be known to the contracting parties at the time of execution."

 6
(A125-126.)

**Confidential Material Redacted**

*ConocoPhillips Co. v. Graham*, 2012 WL 1059084, *6 (Tex.App.-Houston [1

Dist.], March 29, 2012). (A223-236)



Finally, ████████████████████████████████████████

████████████████████ the burden would fall on Ioli Trust to perform due

diligence to protect itself. *BP America Production Co. v. Marshall*, 342 S.W.3d 59

(Tex., 2011) (sophisticated business person familiar with the industry should have

exercised diligence and cannot now use fraud to extend deadline). Ioli Trust has

no basis for complaining of the circumstances surrounding the DRN Agreement.

## II.    The District Court Erred by Adding Contractual Language to Interpret the DRN Agreement.

Basic contract law requires a court to follow the contract terms as written

unless a party proves fraud, accident, or mistake. *Schwartz v. Schwartz,* 247

S.W.3d 804, 806 (Tex.App.–Dallas, 2008); *Davis v. Davis,* 141 Tex. 613, 618, 175

S.W.2d 226 (1943). "Courts … are not authorized to rewrite agreements by

inserting additional terms, definitions, or provisions that the parties could have

included themselves but did not, or by implying terms for which the parties have

not bargained." *Wolf I*, 329 S.W.3d at 636; *Tenneco, Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 646 (Tex. 1996).

The District Court concluded that even though Vigilant was an affiliate of DRN, and even though DRN had obtained a release, license, and covenant not to sue for the patents in suit for all "current or future" affiliates, what the parties actually intended the contract to provide was that "the 'Other Defendants' clause offers DRN a broad license, release, and covenant not to sue extending to all affiliates, past, present and future, *except* any affiliates who were involved in litigation with Plaintiffs at the time of the Agreement's execution." (Emphasis by District Court*.)* While the District Court does not expressly state that it has reformed the contract, that is what the District Court's new language does. The effect of the District Court's reformation is to create two separate lists of affiliates (one list containing affiliates in the lawsuit, the other list containing all other affiliates); however, DRN never agreed to two different lists. If Ioli Trust wanted the definition of affiliate to not include defendants in the lawsuit, it could have requested that language in the affiliate provision. DRN paid for a license benefitting DRN and its affiliates; DRN and its affiliates are entitled to the benefit of the bargain.

## A. Ioli Trust Never Plead Reformation or any Grounds for Reformation and Therefore the District Court Erred in Reforming the Contract.

In order to be entitled to reformation of an agreement, a party must plead either mutual mistake or unilateral mistake accompanied by fraud or other inequitable conduct by the other party. *Liu v. Yang,* 69 S.W.3d 225, 229 (Tex.App.–Corpus Christi, 2001); *Schwartz,* 247 S.W.3d at 806 (phrasing the pleading requirement as "fraud, mistake or accident"); *Orix Capital Markets, LLC v. La Villita Motor Inns, J.V.,* 329 S.W.3d 30, 46 (Tex.App.–San Antonio,2010) ("La Villita did not plead mutual mistake or unilateral mistake, which is required before a party is entitled to reformation"); Federal Rule of Civil Procedure 9 further requires that fraud and mistake be plead with "particularity." As Ioli Trust never plead reformation or an excuse for reformation, the District Court erred in inserting additional language into the DRN Agreement.

## B. The District Court Erred in Reforming the DRN Agreement as There are No Grounds for Reformation.

The District Court's decision herein does not discuss fraud, mistake, or inequitable conduct, and yet the District Court implies that mistake was at work here: the District Court eloquently states that it is "a bridge too far for this Court to cross" for it to conclude that there was a "true meeting of the minds" that Vigilant should benefit from the DRN Agreement. "Meeting of the minds" is one of the

requirements for an enforceable contract. *Goldman v. Olmstead*, 414 S.W.3d 346, 354 (Tex.App.–Dallas, 2013). If there truly was not a meeting of the minds, then the remedy would be rescission, not reformation, as there would be no enforceable contract. *Shotwell v. Morrow*, 498 S.W.2d 432, 434 (Tex.Civ.App., 1973). At that point, Ioli Trust would need to return the consideration paid by DRN.

As the District Court did not rescind the contract, Vigilant assumes the District Court's use of the phrase "meeting of the minds" is meant to indicate that Ioli Trust made a mistake as to how it meant to write the contract and how it actually wrote the contract. However, as each party to a contract is presumed to intend to be bound by the terms of the contract, a failure to have a meeting of minds regarding one provision in a contract does not make that provision unenforceable. For example, in *In re Green Tree Servicing, LLC,* the Texas Court of Appeals enforced an arbitration provision even where there was no meeting of the minds as to that provision. 275 S.W.3d 592 (Tex. App. - Texarkana , 2008). *Green Tree* involved a debtor who defaulted on a residential installment contract. The servicing agent for the loan, Green Tree, initiated litigation and then moved to have the matter arbitrated based on an arbitration clause in the contract. The debtor argued that the arbitration clause was not enforceable because the debtor had not been aware that there was an arbitration clause and accordingly there had not been a meeting of minds regarding that clause. *Id.,* at 599. The trial court

determined that the clause was unconscionable and refused to compel arbitration. *Id.,* at 597. The Texas Court of Appeals issued a writ of mandamus instructing the trial court to send the matter to arbitration. In doing so, the Texas Court of Appeals rejected the debtor's argument that there had not been a meeting of the minds regarding the arbitration clause as such a unilateral mistake does not justify voiding a contract. "Under the general rule, every person who has the capacity to enter into a contract is held to know what words were used in the contract, to know their meaning, and to understand their legal effect." *Id.*, at 599, *citing Indem. Ins. Co. of N. Am. v. W.L. Macatee & Sons*, 129 Tex. 166, 101 S.W.2d 553, 556 (1937); s*ee Vista Quality Markets v. Lizalde,* 438 S.W.3d 114, 124 (Tex.App.–El Paso, 2014) (even where Lizalde claimed he did not understand meaning of arbitration clause, he was still bound); *Amouri v. Southwest Toyota, Inc.,* 20 S.W.3d 165, 169 (Tex.App.-Texarkana 2000).

>    Reformation of contract is available under very limited circumstances:

>    "The underlying objective of reformation is to correct a mutual mistake made in preparing a written instrument, so that the instrument truly reflects the original agreement of the parties. [citation omitted] By implication, then, reformation requires two elements: (1) an original agreement, and (2) a mutual mistake, made after the original agreement, in reducing the original agreement to writing."

*Orix Capital Markets, LLC*, 329 S.W.3d at 46; *LasikPlus of Texas, P.C. v. Mattioli*, 418 S.W.3d 210 (Tex.App.–Houston [14 Dist.], 2013). "There is only one exception to this rule, and that is when there has been a mistake by one party,

accompanied by fraud or other inequitable conduct by the other party." *Orix Capital Markets, LLC,* 329 S.W.3d at 46. Knowledge of the mistake by the other party, may, in some circumstances constitute inequitable conduct justifying reformation. *Trahan v. Mettlen,* 428 S.W.3d 905, 908 (Tex.App.–Texarkana, 2014).

None of these elements are discussed, let alone found, in the District Court decision in favor of Ioli Trust.  There is no finding (or pleading) that the parties made an agreement, but then made a mistake in reducing it to writing.  There is no finding (or pleading) that there has been fraud or inequitable conduct by Vigilant. There is no finding (or pleading) that Vigilant was a party to the DRN Agreement[7] and that Vigilant knew of any mistakes which Ioli Trust was making.

The District Court's sua sponte reformation of the DRN Agreement herein was neither plead, briefed, nor supported by the evidence.  The District Court erred in correcting Ioli Trust's unilateral mistake.

## CONCLUSION AND STATEMENT OF RELIEF SOUGHT

Ioli Trust entered into a contract providing for a release, license, and covenant not to sue to third-party affiliates.  Ioli Trust defined affiliates with extreme broadness; so broad that unknown affiliates years in the past and years in the future benefitted from the release and license.  Under the plain language of the

[7] Indeed, the essence of Ioli's concern is that Vigilant is not a party to the contract but is still benefitting from the contract.

38

contract, Vigilant was one of the affiliates who benefited from the contract. 

███████████████████████████████████████████████

████████ Ioli Trust must accept the terms of its contract. Vigilant respectfully

requests that the District Court's summary judgment decision be reversed, the final

judgment vacated, and the case remanded to the District Court with instructions to

enter judgment in favor of Vigilant.

DATED: October 28, 2014.          **THOMPSON BOGRÁN, P.C.**

                                  */s/ Roy B. Thompson*
                                  Roy B. Thompson, OSB 825013
                                  5 Centerpointe Dr., Suite 400A
                                  Lake Oswego, OR 97035
                                  Telephone:  503-635-3400
                                  Cellphone:  503-381-9945
                                  Facsimile:  503-635-3897
                                  E-mail:       roythompson@comcast.net

                                  *Of Attorneys for Vigilant Video, Inc.*

# ADDENDUM

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| EDWARD D. IOLI TRUST AND GENERAL TRAFFIC CONTROLS, INC., | § § § § | |
| Plaintiffs, | § § | CASE NO. 2:10-CV-00605-JRG |
| v. | § § | |
| AVIGILON CORPORATION, et al., | § § | |
| Defendants. | § § | |

## FINAL JUDGMENT

Before the Court is Plaintiffs' Motion for Final Judgment (Dkt. No. 303). Defendant Vigilant Video, Inc. (now named Vigilant Solutions, Inc.) ("Defendant") does not oppose entry of final judgment, but asks the Court to find that its engagement in settlement negotiations constituted a "reasonable attempt to quantify the damages that would flow from the outcome of the case if the matter had been tried to a jury" (Dkt. No. 205). Defendant does not present a reason why the Court should make such a finding.

Pursuant to Rule 58 of the Federal Rules of Civil Procedure, the Court **ORDERS AND ENTERS FINAL JUDGMENT** as follows:

Judgment is entered in favor of Plaintiffs Edward D. Ioli Trust and General Traffic Controls, Inc. ("Plaintiffs") on all claims and counterclaims pending between Plaintiffs and Defendant. The Court specifically acknowledges that Defendant has preserved its right to appeal the Court's ruling on Defendant's Motion for Summary Judgment, Dkt. No. 268, addressing whether Defendant was released and licensed under the DRN Agreement.

The Court notes that Defendant has asked the Court to note that, as referenced in *Exhibit 1* to Defendant's Response to Plaintiffs' Motion for Entry of Final Judgment (Dkt. No. 305), the parties have made a reasonable attempt to quantify the damages that would flow from the outcome of the case if the matter had been tried to a jury. The Court acknowledges Defendant's request but makes no specific finding on this issue. Defendant has not ceded any right to argue that it has made such an attempt.

Any remaining defenses and/or counterclaims of Defendant not addressed above are dismissed with prejudice.

All relief not specifically granted herein is **DENIED**.

All pending motions not previously resolved are **DENIED**.

The parties shall bear their own costs and attorneys' fees.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| EDWARD D. IOLI TRUST, *et al.*, | § | |
| | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| *v.* | § | CASE NO. 2:10-CV-00605-JRG |
| | § | |
| AVIGILON CORPORATION, *et al.*, | § | |
| | § | |
| *Defendants*. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Vigilant Video, Inc.'s Motion for Sumary Judgment (Dkt. No. 268), filed October 30, 2012. Having considered the briefing of the parties, the Court is of the opinion that Defendant's Motion should be and hereby is **DENIED**, for the reasons set forth below.

### I.     FACTUAL BACKGROUND

Plaintiffs filed suit for patent infringement against a large number of defendants on December 30, 2010. On May 14, 2012, Plaintiffs and Defendant Digital Recognition Network ("DRN") executed a settlement agreement which Defendant Vigilant Video, Inc. ("Vigilant") claims releases them from liability in this suit.

The settlement agreement provides in part that

Plaintiffs hereby release Defendant *and each of their Affiliates* . . . from any and all liabilities, damages, costs, expenses . . . known or unknown, suspected or unsuspected . . . arising prior or subsequent to the Effective Date of the Agreement that Plaintiffs have or may have asserted relating to infringement of any Licensed Patent . . . .

1

> Plaintiffs grant to Defendant *and its respective Affiliates* a non-exclusive, worldwide, fully paid-up, irrevocable license in, to and under the Licensed Patents to make, have made, us, have used, sell, have sold, offer for sale, have offered for sale, lease, have leased, import, or have imported any product, or to practice any method, within the scope of any claim of the Licensed Patents . . . .
>
> . . . .
>
> Plaintiffs covenant that they will refrain from commencing, instituting or prosecuting any lawsuit, action, proceeding, claim, investigation, or demand of any kind or character against Defendant *or each of its Affiliates*, related to the infringement of the Licensed Patents . . . .

Dkt. No. 230-2, at 2-3 (emphasis added). An "Affiliate" is specifically defined in the Agreement

as

> any former, current, or future parent, subsidiary, predecessor-in-interest, or successor-in-interest, and any other corporation, company, joint venture, partnership, firm or other entity formerly, currently or in the future controlled by, controlling, or under common control with a Party, directly or indirectly through one or more intermediaries, where control means direct or indirect ownership or control (whether through contract or otherwise) of more than fifty percent (50%) of the stock or shares entitled to vote . . . .

*Id.* at 1-2. It is undisputed that, at least as of the time of the effective date of the Agreement,

Vigilant met the Agreement's definition of an Affiliate of DRN.

Additionally, another relevant provision of the contract reads as follows:

> Other Defendants in the Ligitagion. Except as specifically set forth herein, this Agreement shall not affect Plaintiffs' ability or right to pursue claims against other defendants in the Litigation. The Parties specifically acknowledge that the consideration paid herein is not intended to compensate Plaintiffs for any claims asserted by Plaintiffs against those other defendants.

*Id.* at 4.

Finally, the Agreement contains certain provisions governing its construction in Article

IX, Paragraph 11, which provides in part that "the language of this Agreement has been

approved by counsel . . . and shall be construed as a whole according to its fair meaning." *Id.* at

11.

2

A000004

## II.    LEGAL STANDARDS

Summary judgment is proper if the pleadings and evidence show that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-55 (1986).  A "genuine issue" is an issue that "can be resolved only by a finder of fact because . . . [it] . . . may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 248.  When the summary judgment movants demonstrate the absence of a genuine dispute over any material fact, the burden shifts to the non-movant to show there is a genuine factual issue for trial.  *Celotex*, 477 U.S. at 323-24.  The Court must draw all reasonable inferences in favor of the non-moving party.  *Monarch Knitting Machinery Corp. v. Sulzer Morat GmbH*, 139 F.3d 877, 880 (Fed. Cir. 1998).

"In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). Courts must "examine and consider *the entire writing* in an effort to harmonize and give effect to *all the provisions* of the contract so that none will be rendered meaningless." *Id.* at 393-94. Where there is no ambiguity in a contract, the construction of the written instrument is a question of law. *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518 (Tex. 1968). "In the usual case, the instrument alone will be deemed to express the intention of the parties for it is objective, not subjective, intent that controls. *Id.*

## III.    ANALYSIS

The parties agree that Vigilant is, under the terms of the Agreement, an Affiliate of DRN, and that, if Vigilant were not itself a defendant in this litigation, it would be released from liability for patent infringement. The dispute centers on the interpretation of the "Other

3

Defendants" clause of the Agreement. Defendants contend, essentially, that the "except as specifically set forth herein" language subordinates the parties' covenants regarding other defendants to the explicit provisions for affiliation and release of affiliates contained in the rest of the contract. Plaintiffs contend that the exception language can only be satisfied by "specific" mention of other defendants, and that the affiliation language of the contract is too general to qualify, especially in light of Vigilant being a named defendant in his case.

Two readings of the "Other Defendants" clause are asserted by the parties. Vigilant's reading has the clause essentially reading "except as set forth in this contract, the terms of this contract shall not apply." Such a construction makes the "except" clause so broad as to render all that follows redundant, and essentially deprives it of meaning. The Plaintiffs' reading of the "except" clause—which usually subordinates what follows to the earlier stated conditions of the exception—is essentially read as controlling rather than subordinating the contract's other terms.

The Plaintiffs' position better captures the objective intent expressed by the language of the Agreement. Though it is hardly a model of clarity, the "Other Defendants" clause of the Agreement is obviously intended to preserve the status quo with respect to all then-existing defendants other than DRN. The word "specifically" in the phrase "except as *specifically* set forth herein" is intended to ensure that only language within the contract that *clearly* identifies and relates to other defendants may alter the litigation status quo, rather than language that applies to the parties generally. With Vigilant then being a named and active defendant in this case, it strains reason to ignore the Agreement's failure to identify Vigilant by name. To conclude that the true meeting of the minds between Plaintiffs and DRN encompassed a full license and release for Vigilant without specifying them by name is a bridge too far for this Court to cross. It is noteworthy that the suggested Order of Dismissal tendered by Plaintiffs and

4

DRN to this Court as Part 4 of their settlement, does not include Vigilant, even though Vigilant was then, and remains, a named party in this action.

Though inartfully executed, the "Other Defendants" clause offers DRN a broad license and release extending to all affiliates, past, present and future, *except* any affiliates who were involved in litigation with Plaintiffs at the time of the Agreement's execution. The Agreement's charge to all who would be tasked with its later construction to do so "as a whole according to its fair meaning" leads this Court when reading the entirety of the Agreement to conclude, from the four corners thereof, that this Agreement does not license or release Vigilant and that Vigilant remains an active party defendant before this Court.

IV.   CONCLUSION

In accordance with the reasons set forth above, Defendant's Motion for Summary Judgment (Dkt. No. 268) is hereby **DENIED**.

So ORDERED and SIGNED this 22nd day of April, 2014.

RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE

5

# United States Court of Appeals
## for the Federal Circuit

*Edward D. Ioli Trust v Vigilant Video, Inc.,* No. 2014-1714

## CERTIFICATE OF SERVICE

I, Robyn Cocho, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by THOMPSON BOGRAN, P.C., Attorneys for Appellant to print this document. I am an employee of Counsel Press.

On **October 28, 2014,** counsel has authorized me to electronically file the foregoing **Brief of Appellant (confidential and non-confidential versions)** with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to any of the following counsel registered as CM/ECF users:

ERIC W. BUETHER
BUETHER JOE & CARPENTER, LLC
1700 Pacific Ave., Suite 4750
Dallas, TX 75201
Eric.Buether@BJCIPLaw.com
Tel: (214) 466-1271
Fax: (214) 635-1827

Copies will also be emailed and mailed to the above counsel on this date.

Upon acceptance by the Court of the e-filed document, six confidential paper copies will be filed with the Court, via Federal Express, within the time provided in the Court's rules.

October 28, 2014                                    /s/ Robyn Cocho
                                                    Counsel Press

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).

__X__ The brief contains _9,192_ words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii),or

_____ The brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

__X__ The brief has been prepared in a proportionally spaced typeface using MS Word 2013 in a 14 point Times New Roman font or

_____ The brief has been prepared in a monospaced typeface using _____ _____in a ___ characters per inch_____ font.


October 28, 2014_                */s/ Roy B. Thompson*_____
Dates                           Roy B. Thompson, OSB 825013
                                *Attorney for Vigilant Video, Inc.*